FILED

MAR 1 8 2013

UNITED STATES BANKRUPTCY COURT
United States Bankruptcy Court
San Jose, California

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 09-60930-ASW |
| MICHEAL S. GREY and SUSAN P. GREY, | Chapter 13 |
| Debtors. | |

| | |
|---|---|
| MICHEAL S. GREY and SUSAN P. GREY, | Adv. Proc. No. 10-05288 |
| Plaintiffs, | |
| vs. | |
| DEUTSCHE BANK TRUST COMPANY AMERICAS AS TRUSTEE, FOR CERTIFICATE HOLDERS OF BEAR STEARNS ASSET BACK SECURITIES, INC. ASSET BACKED CERTIFICATES SERIES 2003-QS13, LITTON LOAN SERVING LP, and DOES 1-100, | |
| Defendants. | |

**MEMORANDUM DECISION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Before the Court are cross-motions for summary judgment. One is a motion filed by Plaintiffs Micheal S. Grey and Susan P. Grey,

who are not represented by counsel.[1]  The Plaintiffs' motion is opposed by Defendants Deutsche Bank Trust Company Americas as Trustee, for Certificate Holders of Bear Stearns Asset-Backed Certificate Series 2003-QS13 ("Deutsche Bank"), and by Litton Loan Servicing LP ("Litton").  Both of these Defendants are represented by attorneys Eric Houser and Robert W. Norman, Jr.  Defendants have also filed a summary judgment motion, which Plaintiffs have opposed.

Except as noted, from the cross-motions, it is evident that the parties agree on the universe of facts.  There are two issues before the Court on these two motions: (1) whether Deutsche Bank has standing to enforce a lost promissory note executed by Plaintiffs in favor of National City Mortgage Co. dba Commonwealth United Mortgage Company ("National City Mortgage") on April 28, 2003; and (2) whether Litton had standing as the loan servicer to seek relief from the automatic stay and file a proof of claim on behalf of Deutsche Bank.  For the reasons which follow, the Court denies both motions.

**Standard of Review**

A court shall grant summary judgment if the pleadings and any filed affidavits, discovery responses and deposition testimony show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Fed. R. Bankr. P. 7065 (incorporating Fed. R. Civ. P. 56); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 584-85 (1986).  Material facts are those that may affect the outcome of

---

[1] Plaintiff Susan P. Grey is currently an active member of the California State Bar.

the case. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. <u>Id</u>. at 248. When determining whether such a factual dispute exists, the Court may not weigh the evidence or make credibility determinations. <u>Id</u>. at 255; <u>see also</u> <u>Bravo v. City of Santa Maria</u>, 665 F.3d 1076, 1083 (9th Cir. 2011). Instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor." <u>Anderson</u>, 477 U.S. at 255 (citing to <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 158-159 (1970). If a genuine dispute as to a material fact exists, then summary judgment must be denied. <u>Id</u>. at 249-50.

Although Rule 56 is silent as to how the Court must analyze simultaneous cross-motions for summary judgment, the Ninth Circuit Court of Appeals instructs that when parties submit cross-motions for summary judgment, each motion must be considered on its own merits. <u>The Fair Housing Counsel of Riverside County, Inc. v. Riverside Two</u>, 249 F.3d 1132, 1135-1136 (9th Cir. 2011) (citing William W. Schwarzer, <u>et al</u>., <u>The Analysis and Decision of Summary Judgment Motions</u>, 139 F.R.D. 441, 499 (Feb. 1922)); <u>see also</u> 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, <u>Federal Practice and Procedure</u>, § 2720, at 335-36 (3d ed. 1998) (stating "the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard."). Separate consideration of each motion is required, because for each motion, the Court construes the evidence in a light most favorable to the non-moving party while considering whether the party with the

1  burden of proof has satisfied such party's burden of production.

2  Anderson, 477 U.S. at 260 n.2; Celotex Corp v. Catrett, 477 U.S.

3  317, 322-323 (1986).

4

5  **Statement of Material Facts**

6  Except as noted below, none of the material facts are

7  disputed.  However, the parties dispute the legal significance of

8  these facts.

9  At the heart of the parties' dispute is a lost promissory

10  note.  The promissory note came into being when Plaintiffs

11  refinanced real property located at 12 Bigos Road, Litchfield,

12  Connecticut 06759 (the "Property") in April 2003,[2] and the

13  $400,000 note was executed in favor of National City Mortgage.[3]

14  Grey Decl. at ¶ 1, 4; Gubran Decl. at ¶ 3; Comstock Decl. at ¶ 3;

15  Yan Decl. at ¶ 4.  What Defendants refer to as a "photocopy" of the

16  note[4] shows that the note was endorsed twice thereafter.

17

18  [2] Defendants characterize the Property as rental property, but a rider to the mortgage indicates that the Property is a second home.

19
20  [3] In her declaration, Ms. Grey repeatedly refers to National City Bank, a non-existent entity, but it appears that Ms. Grey intends to refer to National City Mortgage.

21  [4] A photocopy of the note, which is declared to be a true and
22  correct copy of the note, appears many times in the exhibits. For example, the note is attached as Exhibits 1 and 9 to the
23  Declaration of Diane Gubran, Vice President of Residential Funding Co., fka Residential Funding Corp., and is also Plaintiffs' Exhibit
24  A.  Plaintiffs argue that the endorsements are not authenticated, the note is irrelevant, the note is hearsay, and the copy of the
25  note is not best evidence of the note.  However, the photocopy -- if true and accurate -- is highly relevant.  Plaintiffs have
26  offered no evidence to rebut Defendants' statement in their declarations that this is a true and correct photocopy of the note.
27  The note is also not hearsay, because the note is not offered to show the truth of the matter asserted in the note, but is offered
28  to show that the note was made. See Fed. R. Evid. 801(c). Also, the

(continued...)

Grey Decl., Ex. A "Note,"; Gubran Decl., Ex. 1-9.  Neither endorsement is dated, but the Declaration by Wentong Yan -- a former Delivery Shipper at National City Mortgage and a current Loan Support Specialist II with PNC Mortgage[5] -- shows that both endorsements were made within a few months after the note was executed.  Ms. Yan made the first endorsement and signed an endorsement paying the note to the order of Residential Funding Corporation without recourse.  Yan Decl. at ¶ 5; Yan Decl. Ex. 38 "Note."  The second endorsement was by Judy Faber, Vice President of Residential Funding Corporation, who endorsed the note to the order of Deutsche Bank without recourse.  Yan Decl. at ¶ 5; Yan Decl. Ex. 38 "Note." Deutsche Bank has not been able to locate the original note, and in this regard has executed a "Lost Note Affidavit," discussed _infra_.  Grey Decl. at ¶ 15.

Along with the note, Plaintiffs also executed a mortgage in favor of National City Mortgage on April 28, 2003.[6]  Gubran Decl., Ex. 2 "Mortgage Deed."  The mortgage deed states that the note, or a partial interest in the note, could be sold together with the mortgage to one or more entities without prior notice to Plaintiffs.  _Id_.  The mortgage advises that if the note and mortgage are sold, such sale could result in a change of the "Loan

(...continued)
note is a document affecting an interest in property.  _See_ Fed. R. Evid. 803(14).  Regardless, the Court reserves all rulings on the admissibility of any evidence for trial.

[5] According to the Declaration of Christian S. Martin, now the Vice President and Director of Operations at PNC Mortgage, National City Mortgage merged into PNC Bank in November 2009, and PNC Mortgage is a division of PNC Bank.

[6] The parties do not dispute the authenticity of the photocopy of the mortgage.

Servicer" which collects payments due under the note and "performs other mortgage loan servicing obligations."  Gubran Decl., Ex. 2 "Mortgage Deed."  Id.  The mortgage further states that if there is a change in the identity of the loan servicer, Plaintiffs would be given written notice of the change. Id.

Within a few months of Plaintiffs' execution of the original note and mortgage, the loan was sold.  Yan Decl. at ¶ 6; Yan Decl., Ex. 39 "Assignment of Mortgage and Promissory Note."  On June 26, 2003, National City Mortgage issued an "Assignment of Mortgage and Promissory Note" ("the Assignment") which assigned the mortgage and note directly to Deutsche Bank.[7]  Yan Decl. at ¶ 6; Yan Decl., Ex. 39 "Assignment of Mortgage and Promissory Note."  However, according to the Declarations[8] of Ms. Gubran and Ms. Yan, on July 15, 2003, National City Mortgage sold the loan to Residential Funding Corporation -- not to Deutsche Bank -- for $412,460.07, and

[7] As for the Assignment, Plaintiffs argue that the document is not authenticated, lacks foundation, is not relevant, is not the best evidence, and is hearsay.  However, Ms. Yan's Declaration is sufficient to authenticate the document for purposes of a determination on motions for summary judgment.  The best evidence and hearsay arguments also miss the mark, because the Assignment is offered to show that the Assignment was made, a photocopy can be competent evidence, and the Assignment affects an interest in property.  See Fed. R. Evid. 801(c), 803(14).  Regardless, the Court reserves all rulings on the admissibility of any evidence for trial.

[8] Plaintiffs have asserted evidentiary challenges to most of the declarations submitted by Defendants.  For instance, Plaintiffs have contended that the declarants lack personal knowledge of the facts stated in the declarations.  However, the declarants have sworn to personal knowledge of the stated facts; therefore, the Court must treat declarants as having personal knowledge at this juncture.  Thus, Plaintiffs' challenges are more properly raised to the competence of these witnesses to testify at trial.  As previously stated, the Court reserves all evidentiary rulings for trial.

endorsed the note to Residential Funding Corporation at that time. Gubran Decl. at ¶ 4; Yan Decl. at ¶ 5. Ms. Yan also declared that Ms. Yan was acting with the authority and direction of National City Mortgage when Ms. Yan placed the stamp and signed the endorsement to Residential Funding Corporation. Yan Decl. at ¶ 5.

Ms. Yan's Declaration explains that the note was endorsed to Residential Funding Corporation because Residential Funding Corporation was the sponsor and master servicer under a pooling and servicing agreement ("PSA") for which Deutsche Bank is the trustee. Id. Ms. Gubran's Declaration further explains that Plaintiffs' loan had been transferred into the trust for which Deutsche Bank was the trustee. Gubran Decl. at ¶ 5. Ms. Gubran also states that on July 30, 2003, the note was finally endorsed to Deutsche Bank pursuant to the PSA. Id. at ¶ 6; Gubran Decl., Ex. 8 "Pooling and Servicing Agreement." Thus, as of July 30, 2003, both the note and mortgage had been transferred -- either by way of assignment or endorsement -- to Deutsche Bank.

Ms. Grey states in her Declaration that until the commencement of this bankruptcy case, Plaintiffs never saw, or learned of, the document entitled "Assignment of Mortgage and Promissory Note" dated June 26, 2003, or of the stamped endorsed transfers of their note. Grey Decl. at ¶ 17, 18. Ms. Grey also declares that Plaintiffs were never informed about the sale of the loan or the endorsement of the note to Deutsche Bank. Id. at ¶ 23.

The loan servicer has changed several times. Under the terms of the PSA, the Master Servicer was Residential Funding Corporation. Gubran Decl., Ex. 8 "Pooling and Servicing Agreement." However, it appears that National City Mortgage serviced the loan until at least November 2007. Pursuant to a long

standing Special Servicing Agreement between Residential Funding Corporation and Litton dated December, 23, 1998, Litton was designated as an approved servicer for Residential Funding Corporation to service and administer loans. Comstock Decl., Ex. 22 "Special Servicing Agreement." Further, according to the Declaration of Diane Comstock ("Ms. Comstock") -- a loan analyst at Ocwen Loan Servicing, LLC ("Ocwen"), the current servicer of the subject note -- the board of Residential Funding Corporation adopted the Special Servicing Agreement with Litton and appointed Litton with signature authority in relation to the foreclosure or "the completion of judicial or non-judicial foreclosure" along with other authorized activities in relation to mortgage activities. Comstock Decl. at ¶ 8. Ms. Comstock's Declaration also states that according to Litton's Welcome Letter, Residential Funding Corporation transferred the loan servicing obligation to Litton effective December 1, 2007. Id. at ¶ 9; Comstock Decl., Ex. 24 "Litton's Welcome Letter."

Plaintiffs were informed of the change in loan servicer by multiple letters, one from National City Mortgage dated November 15, 2007, and another from Litton dated December 8, 2007, confirming the change and giving instructions on how payments should be directed. Grey Decl. at ¶ 10; Grey Decl., Ex. K "Letter from National City Mortgage," Ex. L "Letter from Litton." Plaintiffs acknowledge receipt of these letters. Litton continued to service the loan until November 1, 2011, when Ocwen began to service the loan. Comstock Decl. at ¶ 19; Comstock Decl., Ex. 36 "Welcome Letter." On January 5, 2012, Litton transferred Litton's

claim in the Plaintiffs' bankruptcy case to Ocwen.[9]  Comstock Decl. at ¶ 20; Comstock Decl., Ex. 37 "Transfer of Claim."  After the servicing of the loan was transferred to Litton, but before the servicing obligation was transferred to Ocwen, National City Mortgage sent a letter to Plaintiffs dated October 1, 2009, informing Plaintiffs that National City Mortgage would be known as PNC Mortgage, a division of PNC Bank.  Grey Decl., Ex. P "Letter from National City Mortgage."  The letter also instructed Plaintiffs to make mortgage loan payment checks to PNC Mortgage and to mail the payments to PNC Mortgage at a specific address.  Id. An attachment to the letter states that National City Mortgage -- not Litton -- was the present servicer, and that the servicing of the loan was being assigned to PNC Mortgage.  Id.  Defendants do not dispute that the October 1, 2009 letter was sent to Plaintiffs.[10]

Litton began to service the loan in December 2007, when the loan was about to go into foreclosure.  Comstock Decl. at ¶ 8, 9.

---

[9] The Court takes judicial notice of the electronic case file, which shows that Litton first filed a proof of claim on January 11, 2010, and filed an amended claim on September 23, 2010.  The proof of claim was filed on behalf of Deutsche Bank, and allegedly included a copy of the promissory note at issue in this litigation. The amount of the claim listed in the proof of claim is $453,827.63.

[10] On October 29, 2012, the Court had an opportunity to hear the parties' oral arguments concerning the letter from National City Mortgage dated October 1, 2009.  Plaintiffs' position was that the letter unequivocally identifies National City Mortgage as the loan servicer because the letter clearly states that National City Mortgage would be known as PNC Mortgage and instructs Plaintiffs to mail payments to PNC Mortgage.  Defendants argued that the purpose of the letter was to identify a name change, not to inform of any change of loan servicer.  The Court presented a copy of the October 1, 2009 letter to both parties, and Defendants' attorney conceded, "I would not have liked this letter to go out."

According to the Declaration of Kaitlyn Q. Thinh -- an attorney with the law firm of Houser & Allison which represents Defendants -- Plaintiffs had fallen behind on payments because Mr. Grey had been injured in two unrelated motor vehicle accidents caused by uninsured drivers, putting a financial strain on Plaintiffs. Thinh Decl. at ¶ 2; Thinh Decl., Ex. 40 "Letter Dated August 20, 2007." According to Ms. Comstock's Declaration, the records show that on December 6, 2007, Litton contacted Plaintiffs by phone to discuss loss mitigation options. Comstock Decl. at ¶ 10. Notes show that during the phone call, Plaintiffs expressed interest in a repayment plan. Id.

In December 2007, Plaintiffs were served with documents pertaining to a foreclosure action commenced by Deutsche Bank in a Connecticut state court. Grey Decl. at ¶ 13. According to Ms. Grey, it was the foreclosure action which first made Plaintiffs aware that Deutsche Bank claimed an interest in the Property. Id. Ms. Grey states that Plaintiffs believed, up until the time of the foreclosure action, that National City Mortgage was the holder of the note. Id. at ¶ 7.

After the foreclosure action was commenced by Deutsche Bank, Plaintiffs contacted National City Mortgage to determine the standing of Deutsche Bank. Id. at ¶ 14. National City Mortgage informed Plaintiffs that all of the documents contained in National City Mortgage's file pertaining to the note had been transferred[11] in November 2007. Id. Plaintiffs were also told that National City Mortgage had no information to attest to the standing of Deutsche Bank. Id.

---

[11] Ms. Grey's Declaration does not state to whom the documents were purportedly transferred.

Litton stopped moving forward with the initial foreclosure on or about January 30, 2008, because Plaintiffs and Litton had entered into a forbearance agreement, wherein Litton provided Plaintiffs with an arrearage repayment plan. Comstock Decl. at ¶ 11. About six months after the forbearance agreement was entered into, Plaintiffs again fell behind on their mortgage payments. Id. at ¶ 12. However, Litton continued to work with Plaintiffs. Id.

Plaintiffs continued with their attempts to avoid foreclosure, working with both National City Mortgage and Litton. First, Plaintiffs at some point sought to obtain a loan modification with National City Mortgage, and Plaintiffs continued to work with National City Mortgage on the application for a loan modification through 2009.[12] Grey Decl. ¶ 9; Comstock Decl., Ex. 27. The exact timing of the application for a loan modification is unclear, but does not appear to be material.

Litton's records also show that Plaintiffs attempted to sell the Property to avoid foreclosure. Comstock Decl. at ¶ 13; Comstock Decl., Ex. 28 "Litton's Comment Notes for August 5, 2008." On August 5, 2008, Plaintiffs informed Litton that Plaintiffs would like to sell the Property, and that Plaintiffs were under a contract to sell the Property to Plaintiffs' tenants, Dean and Rachel Kennedy. Comstock Decl. at ¶ 13; Comstock Decl., Ex. 29 "Plaintiffs' Exclusive Right to Sell Listing Contract." However, the records show that on September 3, 2008, Plaintiffs informed Litton that Plaintiffs were unable to sell the Property because

---

[12] Ms. Grey's Declaration states that the application was made in August 2007; Exhibit 27 to Ms. Comstock's Declaration indicates that documents were submitted in support of the application in 2008.

Plaintiffs were $40,500 short. Comstock Decl. at ¶ 14; Comstock Decl., Ex. 30 "Litton's Comment Notes for September 3, 2008." According to the records, Plaintiffs asked that Litton share in the shortfall with the junior lienholder, Countrywide, by charging off approximately $20,000. Comstock Decl. at ¶ 14; Comstock Decl., Ex. 30 "Litton's Comment Notes for September 3, 2008." These same records show that on September 8, 2008, Plaintiffs informed Litton that Countrywide was unable to charge off a large enough portion of the unpaid debt, therefore Plaintiffs could not sell the Property. Comstock Decl. at ¶ 15; Comstock Decl., Ex. 30 "Litton's Comment Notes for September 8, 2008." Litton again reminded Plaintiffs about other options such as a deed in lieu of foreclosure, but Plaintiffs did not seem interested. Comstock Decl. at ¶ 15; Comstock Decl., Ex. 31 "Litton's Comment Notes for September 8, 2008."

On November 1, 2008, judicial foreclosure proceedings were again commenced by Deutsche Bank. Comstock Decl. at ¶ 16; Comstock Decl., Ex. 32 "Complaint Filed by Deutsche Bank in the Superior Court of Litchfield." On November 7, 2008, as part of the foreclosure proceedings, Litton requested the original note from Residential Funding Corporation to send to counsel for Litton in the foreclosure action. Comstock Decl. at ¶ 17. Ms. Comstock states that the next day, Litton was informed -- it is not clear by whom -- that the original note was missing from the collateral file. Id. at ¶ 17; Comstock Decl., Ex. 33.

During the course of discovery in the foreclosure action, Plaintiffs requested any documents establishing Deutsche Bank as the holder of the note. Grey Decl. at ¶ 15. In response, Deutsche Bank produced a Lost Note Affidavit on February 27, 2009, but did

1   not provide Plaintiffs with a copy of the note or any other

2   documents.  Id.  The affidavit was prepared by Denise Bailey of

3   Litton, assistant secretary of Litton, and assistant secretary of

4   Residential Funding Company, as "attorney in fact"[13] for Deutsche

5   Bank.  Grey Decl., Ex. N "Lost Note Affidavit."  The affidavit

6   states in pertinent part:

> 3. I, and/or other employees of Litton Loan
> Servicing Inc. personally searched our document
> control center, which took [left blank] hour(s)
> in an attempt to locate the original Promissory
> Note to no avail.
>
> 4. In connection with this case, a diligent
> search was conducted in an attempt to locate
> the original executed Promissory Note as
> indicated below.  I, or other persons acting
> under my direction, checked all files in which
> we could possibly expect to find the Promissory
> Note.  If a copy of the Promissory Note is
> available it is attached hereto.  The
> Promissory Note has not been pledged or
> hypothecated or otherwise impaired.

The affidavit does not state where the original note was located at

any particular point in time prior to the loss of the note, nor

does the affidavit state that Deutsche Bank ever possessed the

original note.  Grey Decl., Ex. N "Lost Note Affidavit."  The

affidavit does not state (indeed, leaves blank) the number of hours

Litton spent searching for the note.  However, the affidavit states

---

[13] The Court interprets this to mean that Ms. Bailey asserted that
she was acting under a power of attorney, although she does not
state that explicitly.

that Deutsche Bank was the "holder" of the note as of February 27, 2009.[14]  Id.

There is no evidence indicating the present location of the note.  The Declaration of Mr. Martin of PNC Mortgage states that PNC Bank -- into which National City Mortgage merged -- is not in possession of the note.  Martin Decl. at ¶ 8.  Mr. Martin has also not been able to locate any other documents referencing Plaintiffs' loan.  Id. at ¶ 9.  Similarly, Ms. Yan of PNC Mortgage also states that Ms. Yan and other employees of PNC Bank have searched PNC Bank's records and have confirmed that the collateral file, which allegedly included the original note, mortgage and assignment, was delivered to Deutsche Bank.[15]  Yan Decl. at ¶ 7.

The Property was scheduled to be auctioned on September 30, 2009, but Plaintiffs filed a bankruptcy petition in the U.S. Bankruptcy Court for the Northern District of California under Chapter 13 in Case No. 09-58171-RLE on September 25, 2009, to prevent the sale.  Plaintiffs then filed this second bankruptcy case on December 14, 2009.  The first bankruptcy case was dismissed on December 17, 2009.

On July 6, 2011, Plaintiffs served a letter that Plaintiffs contend was a Qualified Written Request ("QWR") on attorneys Kevin Hahn, Charles Nunley, Mark Oto, and Erica Loftis -- attorneys that Plaintiffs claim were employed by the law firm Malcolm & Cisneros,

---

[14] Plaintiffs believe that the lost note affidavit does not contain sufficient content to demonstrate that Deutsche Bank is entitled to enforce the note.  The Court will address this argument within the analysis portion of this decision.

[15] According to Ms. Yan, neither National City Mortgage nor PNC claims any interest in the Plaintiffs' note or mortgage after June 26, 2003.

which represents Defendants in this proceeding.[16]  Grey Decl. at
¶ 19; Grey Decl., Ex. Q "QWR Letter."  The letter explained that
Plaintiffs have been unable to determine who currently holds the
note, and requested copies of the note and other information about
anyone who has held the note.  Grey Decl. at ¶ 19; Grey Decl., Ex.
Q "QWR Letter."  According to Ms. Grey, there was no acknowledgment
or response of any kind to the letter.[17]  Grey Dec. at ¶ 19.

        According to Ms. Grey, there are at least two other liens on
the property.  One is a broker's lien in the amount of $50,000 held
by Country Living & Associates.  Id. at ¶ 25.  The other is in the
amount of $12,500, and is held by Edward F. Cullen.  Id. at ¶ 26.
Plaintiffs do not dispute the validity of these two liens.


**Analysis**

        Before the Court turns to the two motions, it is important to

---

[16] According to the California State Bar's website, it appears
that not all of these attorneys are currently employed by Malcolm &
Cisneros.  Instead, the State Bar's website shows that only Kevin
Hahn and Erica Loftis are employed by this firm.

[17] Plaintiffs request that the Court treat Defendants' failure to
respond to Plaintiffs' inquiry regarding ownership of the note as
evidence suggesting lack of Defendants' ownership.  Defendants
argue that the letter does not constitute a QWR because the letter
was not sent to the loan servicer, and Plaintiffs did not provide
sufficient reasons for claiming that the account is in error as
required by 12 U.S.C. § 2605(e)(1)(B)(ii).  Defendants further
argue that even if the letter constitutes a QWR, the Court should
disregard Plaintiffs' request because Plaintiffs failed to raise
the claim in their Second Amended Complaint.  Because Plaintiffs
first raised the § 2605(e)(1)(B)(ii) claim in this motion, the
claim is not properly asserted, and the Court does not consider it.
See Coleman v. Quaker Oats Co., 232 F.3d 1271, 1291-1293 (9th Cir.
2000).  However, the Court does not opine whether the claim could
be asserted, if done properly.

identify the claims which are asserted in this adversary proceeding. Plaintiffs's Second Amended Complaint[18] asks the Court to make various, overlapping declarations: (1) that Deutsche Bank has no enforceable interest in the Property; (2) that Litton is an improper party to the action; (3) that title is quiet and Plaintiffs take the Property free of Deutsche Bank's mortgage encumbrances;[19] and (4) that Litton's Proof of Claim filed on January 11, 2010 and the Amended Proof of Claim filed on September 23, 2010 are defective, false, fraudulent or otherwise unlawful.

However, there are really only two determinations which Plaintiffs ask this Court to make: (1) that Deutsche Bank lacks standing to enforce the lost promissory note; and (2) that Litton lacks standing to assert a claim, because Litton cannot enforce the note on behalf of Deutsche Bank without proof of Deutsche Bank's right to enforce the note, and because Litton was not the servicer when the proof of claim was filed. Both cross-motions are aimed at these two issues.[20]

---

[18] Because Plaintiffs are not represented by counsel, the Court has liberally construed the Second Amended Complaint in accordance with Haines v. Kerner, 404 U.S. 519, 520 (1972), and Johnson v. Lucent Technologies, Inc., 653 F.3d 1000, 1011 (9th Cir. 2011). However, as noted above, Ms. Grey, one of the Plaintiffs, is a licensed attorney.

[19] The Second Amended Complaint does not specify whether the quiet title claim arises under Connecticut or California law.

[20] In the Second Amended Complaint, Plaintiffs claim that the sworn proof of claim filed by Litton on behalf of Deutsche Bank is false, fraudulent and otherwise unlawful. Plaintiffs have not sought summary judgment on any fraud claim which might be asserted. However, the Court understands the allegations of fraud to be premised upon Litton's alleged lack of standing.

On the issue of standing, Defendants bear the burden of proof, and hence, the burden of production. See Veal v. American Home Mortgage Servicing, Inc. (In re Veal), 450 B.R. 897, 907 n.11 (B.A.P. 9th Cir. 2011). There are two types of standing: constitutional and prudential. See Cetacean Cmty. v. Bush, 386 F.3d 1169, 1174-75 (9th Cir. 2004). Constitutional standing requires the following: (1) the plaintiff must suffer an "injury in fact" that is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) the injury must be fairly traceable to the defendant's action; and (3) it is likely, not speculative, that the injury can be redressed by a ruling in the plaintiff's favor. Id. By contrast, prudential, or non-constitutional, standing exists when a particular plaintiff has the statutory right to sue. Id.

Therefore, within the context of Plaintiffs' motion, the Court considers whether the evidence, construed in a light most favorable to Defendants, supports a finding of standing. In the context of Defendants' motion, the Court considers whether Defendants have presented uncontroverted evidence which, construed in a light most favorable to Plaintiffs, establishes standing.

**A. Plaintiffs' Motion**

First, in considering Plaintiffs' motion, the Court views the evidence in a light most favorable to Defendants. In doing so, there is some evidence that Deutsche Bank is entitled to enforce the promissory note. The photocopy of the promissory note suggests an unbroken chain of endorsements which ultimately led to Deutsche Bank becoming the holder of the note. Likewise, the Assignment of the note and mortgage were also to Deutsche Bank, and despite the

loss of the note, there is a lost note affidavit which states that the note was not pledged, hypothecated or otherwise impaired, and that Deutsche Bank was the holder[1] of the note at the time the affidavit was sworn.

Despite the apparent irregularity with which Plaintiffs take objection -- specifically, the Assignment to Deutsche Bank occurring before the endorsement to Residential Funding Corporation and later endorsement to Deutsche Bank -- the Court must, for purposes of Plaintiffs' motion only, construe this evidence most favorably to Defendants. Because Residential Funding Corporation was the master servicer for the PSA in which Deutsche Bank was the trustee, the Assignment is not necessarily inconsistent with the two later endorsements.

There is also some evidence that Litton was the servicer of the loan at the time when Litton filed a proof of claim on behalf of Deutsche Bank. There is evidence that Litton took over the servicing of the loan on December 1, 2007, and continued to act as the loan servicer until the servicing obligation was transferred to Ocwen on November 1, 2011. Litton filed the proof of claim on behalf of Deutsche Bank on January 11, 2010. Thus, the Court must deny Plaintiffs' motion.

**B. Defendants' Motion**

Next, in considering Defendants' motion, the Court views the evidence in a light most favorable to Plaintiffs. In this analysis, the Court considers whether the evidence which Defendants

---

[1] The affidavit claims that Deutsche Bank was the "holder" of the note, but because the note was lost and Deutsche Bank lacked physical possession of the note, the Court understands the affidavit to claim that Deutsche Bank was the owner of the note.

have presented undeniably shows that Deutsche Bank has the right to enforce the note. Because the note is lost, and all that Deutsche Bank has been able to produce is a lost note affidavit of questionable legal validity -- as discussed infra -- the Court considers whether the lost note affidavit contains sufficient information to establish that Deutsche Bank has the present right to enforce the note. At the October 29, 2012 hearing, the parties agreed that Connecticut state law governs the lost affidavit issue, although they disputed the sufficiency of the lost note affidavit.

The lost note affidavit suggests that, at least as of February 27, 2009, Deutsche Bank was the holder of the note. However, the Court cannot view the affidavit in a vacuum. Judging the sufficiency of the affidavit under Connecticut law, the Court cannot conclude that the applicable Connecticut statute is satisfied. Under Conn. Gen. Stat. § 42a-3-309, a creditor can enforce a lost, destroyed or stolen instrument, as follows:

> (a) A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

> (b) A person seeking enforcement of an instrument under subsection (a) must prove the terms of the instrument and the person's right to enforce the instrument. If that proof is made, section 42a-3-308 applies to the case as if the person seeking enforcement had produced the instrument. The court may not enter judgment in favor of the person seeking enforcement unless it finds that the person required to pay the instrument is adequately

> protected against loss that might occur by
> reason of a claim by another person to enforce
> the instrument. Adequate protection may be
> provided by any reasonable means.

Here, the lost note affidavit does not state that Deutsche Bank ever had possession of the note, as required by § 42a-3-309(a)(i). Indeed, the affidavit is silent about many important things, including: whether Deutsche Bank ever had physical possession of the note; if so, where Deutsche Bank kept the note; who at Deutsche Bank was the custodian of the note; what specific efforts were made to locate the note; or how long particular individuals searched for the note, or where such individuals searched. In addition, the affidavit is current only as of February 27, 2009, and there is nothing more current which demonstrates, one way or the other, that Deutsche Bank continues to have the right to enforce the note.

There is also evidence which suggests that Litton may not have been the loan servicer when Litton filed the proof of claim. Indeed, the October 1, 2009 letter to Plaintiffs identified National City Mortgage as the loan servicer. The letter stated that National City Mortgage would be known as PNC Mortgage, and that Plaintiffs should mail payments to PNC Mortgage. The October 1, 2009 letter is in direct conflict with the evidence that Litton was the loan servicer between December 1, 2007 and November 2011. Therefore, there is a genuine disputed issue of fact on this issue, and the Court must deny Defendants' motion.

## C. Rule 9011 Sanctions

In their Opposition to Defendants' cross-motion, Plaintiffs

ask the Court to sanction Defendants under Fed. R. Civ. P. 11.[2]
Plaintiffs claim that "since 2008 Defendants have admitted by their
evidence Defendants knew they could not establish themselves as the
holder entitled to enforce." Defendants respond that Plaintiffs
failed to follow proper procedures in bringing this request.

Any request for sanctions should be by separate motion -- not
raised in an opposition to a cross-motion. In addition, Plaintiffs
failed to follow the correct procedure for bringing a motion under
Fed. R. Bankr. P. 9011. Under Rule 9011(c)(2), Plaintiffs were
required to first serve a separate Rule 9011 motion and give
Defendants 21 days to either withdraw or correct the paper that is
the subject of the motion. Compare Radcliffe v. Rainbow Constr.
Co., 254 F.3d 772, 789 (9th Cir. 2001). ("Failure to follow the
procedure set forth in Rule 11(c)(2) precludes the moving party
from obtaining an award of sanctions.") In any event, because
there is some evidence that Deutsche Bank might be the holder of
the note, sanctions are not appropriate. Therefore, the Court will
not impose sanctions at this juncture.

**Conclusion**

For the reasons stated above, both cross-motions for summary
judgment are denied. Plaintiffs' request for Rule 11 sanctions is
also denied.

Dated: 3/18/13

ARTHUR S. WEISSBRODT
UNITED STATES BANKRUPTCY JUDGE

---

[2] It is Fed. R. Bankr. P. 9011 which applies to this adversary
proceeding, not Fed. R. Civ. P. 11. However, the two rules are
similar in many respects.

Micheal Scott Grey
Susan Patricia Grey
2072 Folle Blanche
San Jose, CA 95135

Eric D. Houser
Law Offices of Houser and Allison
9970 Research Dr.
Irvine, CA 92618

Robert W. Norman, Jr.
Houser and Allison
3780 Kilroy Airport Way #130
Long Beach, CA 90806

William G. Malcolm
Law Offices of Malcolm and Cisneros
2112 Business Center Dr. 2nd Fl.
Irvine, CA 92612

Devin Derham-Burk
P.O. Box 50013
San Jose, CA 95150-0013

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California